UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| TOUZI TECH LLC, | ) ) ) | |
| Plaintiff | ) ) | Civil No. 3:22-cv-00002-GFVT |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| BIOFUEL MINING, INC. | ) ) | **&** |
| Defendant. | ) ) ) ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Plaintiff's Motion for a temporary restraining order, preliminary injunction, and writ of possession. [R. 1.]  The Plaintiff failed to show the alleged harm is so immediate and irreparable to warrant granting a TRO without notice to the Defendant.  Accordingly, the Plaintiff's request for a TRO is **DENIED**.  The Court will continue consideration of the requests for a preliminary injunction and writ of possession until the Defendant has had notice and an opportunity to respond.

**I**

The parties entered into a Hosting Agreement commencing on November 1, 2021.  [R. 1-3 at 6.]  The Defendant, BioFuel, agreed to maintain and operate bitcoin mining equipment belonging to the Plaintiff, Touzi Tech.  *Id.* at 7.  The Defendant also guaranteed it would provide 3.5MW of electricity to power the equipment.  *Id.* at 6.  In exchange, the Plaintiff would pay the Defendant .046 USD per kWh of energy used in a month-long period, as well as 10% of the monthly mining profits (total bitcoin mined in one month, minus the electricity used) in bitcoin. *Id.* at 7.

Many issues arose in the first month of the agreement. The Plaintiff alleges that throughout November, the equipment would be shut down "for long periods of time" though the Defendant promised to operate the equipment continually. [R. 1-1 at 4.] After the first month of operations, the Defendant sent the Plaintiff an invoice for $62,793.03, which the Plaintiff believes is significantly higher than the amount it owes for November operations. *Id.* The Plaintiff believes it owes the Defendant $14,611.50 and wired it that amount. *Id.* The Plaintiff had also paid the Defendant a deposit of $231,840. *Id.* The Defendant is now in possession of these payments and the Plaintiff's bitcoin mining equipment, which the Plaintiff alleges the Defendant is currently using for its own gain. The Plaintiff now moves the court for injunctive relief preventing the Defendant from using and detaining its equipment and forcing the Defendant to provide an accounting of its operations and return the bitcoin it mined using the Plaintiff's equipment.

## II

The Plaintiff requests three forms of injunctive relief: (1) a temporary restraining order, (2) a preliminary injunction, and (3) a writ of possession. [R. 1.] At this time, the Court must address the request for a TRO because the Defendant has not yet been noticed. Analysis of the requests for a preliminary injunction and writ of suppression will occur after the Defendant has been given notice and an opportunity to respond. Rule 65 allows the Court to issue a TRO without notice to the other party only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The harm must be "'so immediate'" that relief is necessary before a

preliminary injunction hearing can occur.  *See Branch Banking and Trust Co. v. Jones*, 5:18-cv-610-JMH, 2018 WL 10772684, at *2 (E.D. Ky. Nov. 19, 2018) (quoting *Erard v. Johnson*, 905 F. Supp. 2d 782, 791 (E.D. Mich. 2012)).  "[A] temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits[.]" *Stein v. Thomas*, 672 Fed. App'x 565, 572 (6th Cir. 2016).  This is because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974)).

  The Plaintiff has not made the required showing that "immediate or irreparable injury" will occur *before* the Defendant can be noticed and have an opportunity to respond.  Fed. R. Civ. P. 65(b)(1)(A).  The Plaintiff requests the following forms of injunctive relief:

> (1) BioFuel is enjoined and restrained from using Plaintiff's bitcoin mining equipment and is enjoined and restrained from detaining the bitcoin mining equipment in its possession.
>
> (2) BioFuel shall account for its improper mining operations and deliver to the Plaintiff all bitcoin that it received from using Plaintiff's equipment.

[R. 1-4 at 2.]  The Plaintiff argues it will suffer irreparable harm because the Defendant is financially unstable and may become insolvent, which would prevent the Plaintiff from recovering money damages, in the time it will take to litigate this action.  [R. 1-1 at 6-7.]  No argument is presented about the specific harm the Plaintiff will suffer in the few weeks it will take to notice and allow the Defendant to respond.

  The Plaintiff's alleged harm would be compensable by money damages for its lost profits and loss of value in the equipment.  The Plaintiff recognizes that courts are typically precluded from granting injunctive relief when the movant could be compensated by money damages

following an adjudication of the merits. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, the Plaintiff argues it will suffer irreparable harm in the interim because the Defendant is financially unstable, presenting a risk that "final equitable relief may be uncollectible." [R. 1-1 at 6.] The cases the Plaintiff relies on to support that contention are inapposite to the request for a TRO because most of them considered financial instability in granting preliminary injunctions, not TROs. *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982); *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982); *Transamerica Ins. Finance Corp. v. North American Trucking Ass'n Inc.*, 937 F. Supp. 630 (W.D. Ky. 1996). The district court in *Reebok* did issue a TRO freezing a party's assets, but this was pursuant to a specific statutory authority that is not relevant to this case. *Reebok Int'l v. Marnatech Enter., Inc.*, 970 F.2d 552 (9th Cir. 1992).

      The Plaintiff cites, and the Court is aware of, no authority holding that a party's financial instability constitutes a harm that is sufficiently immediate to justify a TRO. The Plaintiff provides no specifics about how the Defendant's financial state will devolve in the short time the Defendant would need to respond. A TRO granted on this ground would be inappropriate without a specific showing that recovery will somehow become impossible in the next few weeks. The Plaintiff merely claims that the Defendant is in "financial crisis" because it used the Plaintiff's deposit for "unrelated expenditures," then could not make payroll or pay a $62,793.03 electricity bill. [R. 1-1 at 7.] While this does show financial instability, it does not show that the Defendant will become irrecoverably insolvent in the weeks before the Defendant can respond.

      The Plaintiff's Motion does make other brief claims about the harms the Defendant's actions are currently causing. The Plaintiff states it loses $9,000 in potential bitcoin mining profit every day it is unable to use its mining machines. It presents no evidence that, if the Court

4

were to issue a TRO enjoining the Defendants from "detaining" the equipment, it would in fact recover, move, re-establish, and begin operating the equipment in the short time it would take to allow the Defendant to respond.  Similarly, the Plaintiff mentions that the Defendant's improper use of the equipment "has impaired its condition, quality and value."  [R. 1-1 at 6.]  The Court has no further details on the significance of this harm and cannot calculate the damage that will be done to the equipment in the time it will take for the Defendant to respond to the Motion.  Without any evidence that these alleged harms are *so immediate* that injunctive relief is required before the Defendant responds, a TRO is inappropriate at this time.

      The Plaintiff failed to make the required showing that it will suffer such immediate harm that a TRO is justified before the Defendant has an opportunity to respond.  Accordingly, the Court denies the request for a TRO and continues consideration of the requests for a preliminary injunction and writ of possession.  The Court will schedule a hearing on the remaining requests and impose an expedited briefing schedule.

## III

      Accordingly, because the Plaintiff has failed to show immediate and irreparable harm will occur before the Defendant can be noticed and respond, the Court **ORDERS** as follows:

1. The portion of the Plaintiff's Motion [R. 1] requesting a TRO is **DENIED**. The portions of the Motion [R. 1] requesting a preliminary injunction and a writ of possession remain pending;

2. The Defendant, BioFuel, Inc., **SHALL RESPOND** to the portions of the Motion for Injunctive Relief requesting a preliminary injunction and a writ of possession [R. 1] by close of business on **Tuesday, January 25, 2022;**

3. The Plaintiff may file any desired reply brief to the Defendant's response by close of business on **Friday, January 28, 2022;**

4. A hearing on the request for a preliminary injunction and writ of possession shall be held on **Tuesday, February 1, 2022** at **10:00 a.m**. in the United States District Courthouse in **Frankfort**, Kentucky with Judge Gregory F. Van Tatenhove presiding.

This the 13th day of January, 2022.

Gregory F. Van Tatenhove
United States District Judge